# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2020AP29-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>      Plaintiff-Respondent,<br>   v.<br>Westley D. Whitaker,<br>      Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 396 Wis. 2d 557, 957 N.W.2d 561
PDC No: 2021 WI App 17 - Published

| | |
|---|---|
| OPINION FILED: | July 5, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 9, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Vernon |
| JUDGE: | Darcy Jo Rood |

JUSTICES:

KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and HAGEDORN, JJ., joined. ROGGENSACK, J., filed a concurring opinion in which Ziegler, C.J., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion. HAGEDORN, J., filed a concurring opinion.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Christopher M. Zachar* and *Zachar Law Office, LLC,* La Crosse. There was an oral argument by *Christopher M. Zachar.*

For the plaintiff-respondent, there was a brief filed by *Daniel J. O'Brien*, assistant attorney general, with whom on the briefs was *Joshua L. Kaul*, attorney general. There was an oral argument by *Daniel J. O'Brien*.

**2022 WI 54**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP29-CR
(L.C. No. 17CF163)

STATE OF WISCONSIN    :    IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Westley D. Whitaker,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 5, 2022**

Sheila T. Reiff
Clerk of Supreme Court

KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and HAGEDORN, JJ., joined. ROGGENSACK, J., filed a concurring opinion in which Ziegler, C.J., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion. HAGEDORN, J., filed a concurring opinion.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 JILL J. KAROFSKY, J. As a teenager, Westley Whitaker preyed on his three younger sisters, repeatedly sexually assaulting them while they all were living in an Amish community in Vernon County. Whitaker's parents and elders in the community became aware of the assaults, but failed to protect the victims by either stopping Whitaker from continuing his sexual abuse or alerting secular authorities. A decade later,

Whitaker confessed, was charged with six counts of sexual assault, and pled no contest to one of the charges.  The circuit court[1] sentenced Whitaker to two years of initial confinement and two years of extended supervision.

¶2  During sentencing, the circuit court addressed the need for the adults in the Amish community to effectively intervene to protect the girls in the community from sexual abuse.  On appeal, Whitaker contends these statements violated his rights to religious liberty and association protected by the First Amendment to the U.S. Constitution, and thus evince the circuit court's reliance on improper sentencing factors.  As a result, he demands resentencing as a matter of due process under the Constitution's Fourteenth Amendment.

¶3  We conclude that nothing in the transcript suggests the circuit court increased Whitaker's sentence solely because of his religious beliefs or his association with the Amish community.  Instead, the transcript shows each challenged factor bears a reasonable nexus to proper and relevant sentencing factors.  Thus, we affirm his sentence.

I.  BACKGROUND

¶4  Whitaker sexually assaulted three of his sisters almost daily when he was between the ages of twelve and fifteen.  The abuse started in 2005 when Whitaker began sexually

---

[1] The Honorable Darcy J. Rood of the Vernon County Circuit Court presided.

2

assaulting his ten-year-old sister, A.B., almost every day.[2] During that time period, he also repeatedly assaulted another sister, C.D., beginning when she was seven years old. Whitaker threatened to "kill" C.D. if she told anyone about the assaults and he "threatened to make her life hard if she did not cooperate with him." Whitaker also sexually assaulted a third sister, E.F., when she was six or seven years old. At some point, Whitaker's parents and elders in the Amish community in which Whitaker lived became aware of his ongoing assaults on his sisters. Although the elders attempted some form of intervention, it ultimately failed as Whitaker continued the assaults. No one reported Whitaker's crimes to the authorities nor sought help from any resources outside of the community. Whitaker ended the attacks sometime in 2007.

¶5 Whitaker and his sisters were raised as part of a conservative family that moved often between churches. At the time of the assaults, they were part of an Amish community in Vernon County, Wisconsin, that Whitaker characterized as having beliefs similar to the "Old Order Amish." The record is sparse regarding that community and its relationship to the larger Amish community. Whitaker explained that within his childhood community, "sex [was] considered off limits and taboo," feelings of sexual desire were viewed as sinful, and children did not interact with the opposite sex.

---

[2] To protect the dignity and privacy of the victims, we use initials that do not correspond to their real names.

¶6 A decade after the assaults, Whitaker confessed to his crimes at the urging of his sister, A.B., and was charged with six counts of first degree sexual assault of a child in violation of Wis. Stat. § 948.02(1)(e) (2015-16).[3] As a result of plea negotiations, Whitaker pled no contest to one count of first degree sexual assault of a child and the other five counts were dismissed and read-in.[4]

¶7 At sentencing, the circuit court first granted Whitaker's unopposed motion to be exempted from the sex offender registration requirement, pointing to Whitaker's young age at the time of the offense and its belief that Whitaker posed no current risk to reoffend. The circuit court stated that Whitaker's behavior was "juvenile" and "in a community and a family that wasn't protecting the daughters." As for the appropriate sentence, the victims requested that Whitaker serve two to five years of initial confinement. The State argued the crimes' seriousness, their effect on the victims, and the need for punitive consequences warranted a six-year bifurcated prison sentence. In turn, Whitaker asked for no incarceration time and no probation, emphasizing that he was remorseful and took responsibility for his actions when confronted by his sister. He argued that the strict religious culture he grew up in kept

---

[3] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[4] A "read-in" crime is one that either is not charged or is dismissed as part of a plea agreement, but that the defendant agrees the circuit court may consider at sentencing, along with the underlying conduct. See Wis. Stat. § 973.20(1g)(b).

him from "the education that a child would typically receive" and that "when you're an adolescent and you're going through something like this, and you have nobody to talk to, no peers, no teachers, social workers, health care providers, it's understandable that a kid in [this] position could have a skewed view of how to deal . . . with adolescent development." He also noted "that there were adults who were aware of this conduct when it was happening . . . and it was recommended that the allegations remain within the community."

¶8 The circuit court sentenced Whitaker to a four-year bifurcated prison sentence with two years of initial confinement and two years of extended supervision. The circuit court concluded that: Whitaker's current risk of reoffending was "zero"; he posed no threat to the public; and he needed no rehabilitation. The circuit court reasoned the State's recommended six-year sentence would be too long because of Whitaker's young age at the time of the assaults. It then stated that "the relevant Galleon [sic][5] factors are punishment, and also deterrence of others, hopefully deterrence of others in the Amish community." Expanding on its discussion of the Amish community, the circuit court stated:

> I happen to live in the midst of an Amish community.
> They're my neighbors. And sexual assault of sisters
> is not something that is accepted. I understand it
> often happens and that it is dealt with in the
> community. And that's not sufficient. That's not

---

[5] State v. Gallion, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197.

5

sufficient when it is not a one-time thing and not when the women, the daughters, the wives in the Amish community are not empowered to come forward. . . . [E]very Amish young man is raised in that type of community, in that situation, and you aren't seeing them all sexually assault their sisters night after night after night. . . . I'm hoping that this sentence deters, as I said, the community.

¶9 The circuit court further emphasized the gravity of the offenses, stating that this was not "one act. It was a thousand. It was years of abuse." It detailed the assaults' effect on A.B. who had been "destroyed" by both the abuse and the threats from her "beloved older brother," and how she had not been safe at home, "the one place where [she was] supposed to feel safety." The circuit court went on to stress that "the actual facts of this case are abhorrent," and that a sentence of "no confinement would depreciate the seriousness of this offense." It continued that "a prison sentence is the only way to send the message to Mr. Whitaker and to the community that this is totally unacceptable behavior. And perhaps it now can help the family heal. And I hope that the elders in the community pay attention to this." Finally, the court noted that "punishing Mr. Whitaker for his behavior was critical."

¶10 In reviewing the sentencing transcript, the court of appeals assumed that Whitaker's constitutional rights were implicated by the sentencing court's attention to the community elders' failure to involve secular authorities but concluded that its nexus to a proper sentencing consideration rendered the sentence permissible. State v. Whitaker, 2021 WI App 17, 396 Wis. 2d 557, 957 N.W.2d 561. Although the sentencing court

6

identified that consideration as "general deterrence," the court of appeals identified "protection of the public" as the true consideration underlying the sentencing court's discussion. Id., ¶34.

## II.  STANDARD OF REVIEW AND SENTENCING STANDARDS

¶11  We review a circuit court's sentencing decision for an erroneous exercise of discretion.  State v. Dodson, 2022 WI 5, ¶8, 400 Wis. 2d 313, 969 N.W.2d 225.  A circuit court erroneously exercises its sentencing discretion when it actually relies on clearly irrelevant or improper factors.  Id. Accordingly, a defendant challenging his or her sentence must prove by clear and convincing evidence that:  (1) the challenged factor is irrelevant or improper; and (2) the circuit court actually relied on that factor.  Id.

¶12 Sentencing factors are proper when they inform valid sentencing objectives including "the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others."  State v. Gallion, 2004 WI 42, ¶40, 270 Wis. 2d 535, 678 N.W.2d 197; see also Wis. Stat. § 973.017(2).  Primary factors informing those objectives include the gravity of the offense, the character of the offender, and the need to protect the public.  Dodson, 400 Wis. 2d 313, ¶9. Secondary factors include:

> (1) Past record of criminal offense; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at

7

trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention.

Gallion, 270 Wis. 2d 535, ¶43 n.11.

¶13 To prove "actual reliance" on an improper factor, a defendant must show that the circuit court made the improper factor a part of the "basis for the sentence." Dodson, 400 Wis. 2d 313, ¶10. We have interpreted this to mean that a defendant must show that the circuit court "impose[d] 'a harsher sentence solely because'" of the improper factor. State v. Williams, 2018 WI 59, ¶¶46, 53, 381 Wis. 2d 661, 912 N.W.2d 373 (quoting Buckner v. State, 56 Wis. 2d 539, 550, 202 N.W.2d 406 (1972)); see, e.g., State v. Dalton, 2018 WI 85, 383 Wis. 2d 147, 914 N.W.2d 120 (holding that a circuit court impermissibly imposed a harsher sentence solely because the defendant exercised his constitutional right to refuse to submit to a warrantless blood draw). To be the "sole" cause of a harsher sentence, an improper factor must "stand alone as an independent factor." See Williams, 381 Wis. 2d 661, ¶50. That means a circuit court's reliance on an improper factor cannot be cured by additionally relying on other proper, but unrelated, sentencing considerations. However, if a circuit court's reference to a challenged factor bears "a reasonable nexus" to a

8

proper sentencing factor, then the circuit court has not imposed sentence based "solely" on the improper factor.[6] Id.

---

[6] This case highlights some confusion regarding the correct approach to evaluating constitutionally protected conduct considered at sentencing. The court of appeals, following guidance from federal cases, has applied a "reliable nexus" test in determining whether consideration of constitutionally protected conduct at sentencing is "improper." See State v. Fuerst, 181 Wis. 2d 903, 913, 512 N.W.2d 243 (Ct. App. 1994) ("[A] sentencing court may consider a defendant's religious beliefs and practices only if a reliable nexus exists between the defendant's criminal conduct and the defendant's religious beliefs and practices."). This "reliable nexus" test is applied under the first prong of the test set out in Alexander——the improper-factor prong. State v. Alexander, 2015 WI 6, ¶17, 360 Wis. 2d 292, 858 N.W.2d 662.

More recently, this court has applied a "reasonable nexus" test in the context of the second prong——the actual-reliance prong. See State v. Dodson, 2022 WI 5, ¶10, 400 Wis. 2d 313, 969 N.W.2d 225 (citing State v. Williams, 2018 WI 59, ¶53, 381 Wis. 2d 661, 912 N.W.2d 373); State v. Harris, 2010 WI 79, ¶4, 326 Wis. 2d 685, 786 N.W.2d 409. But see Dodson, 400 Wis. 2d 313, ¶¶21-23 (Hagedorn, J., concurring) (arguing that the reasonable nexus analysis more properly goes to whether the factor was "improper" rather than whether it was "actually relied" on). In Williams, this court appeared to consider a nexus to proper sentencing factors under both analytical prongs. Williams, 381 Wis. 2d 661, ¶¶51, 53 (saying both that when the "factor is inextricably intertwined with a defendant's character and lack of remorse, its consideration is proper," and that "[t]he sole reference to [the alleged improper factor] bore a reasonable nexus to the relevant factor of Williams' lack of remorse").

### III. ANALYSIS

¶14 Whitaker argues that the circuit court relied on an improper sentencing factor——thereby violating his constitutional rights——when it: (1) repeatedly referenced Whitaker's childhood Amish community; and (2) stated its intent to deter others within that community from failing to report or stop ongoing sexual assaults. Whitaker's exact constitutional claims are somewhat nebulous, but they appear to boil down to freedom of association and the free exercise of religion. As to the former, Whitaker argues that when the circuit court said it hoped the sentence would send a message to members of the Amish community, the court improperly based the sentence on his protected association with that community. As for the latter, Whitaker argues that when the court encouraged his childhood Amish community to report sexual assaults to the secular authorities, contrary to the community's practice of avoiding outside societal influence, the circuit court violated his right to free religious exercise. Because this case can be decided on

---

Thus, depending on how a court looks at it, a reasonable nexus to a proper and relevant sentencing factor either: (1) renders the challenged factor proper because it is "inextricably intertwined" with a relevant and proper factor; or (2) indicates that the court was actually relying on the related relevant and proper factor and not solely relying on the challenged factor. Either way, the analysis is equivalent. An appellate court affirms the sentence if the challenged factor is relevant to proper sentencing considerations rather than a stand-alone factor untethered to the underlying criminal conduct. In this case, we continue to follow this court's more recent guidance and apply the "reasonable nexus" test under the actual-reliance prong.

narrower grounds, as a prudential matter we assume without deciding that any consideration of Whitaker's childhood Amish community was improper.[7] That said, we hold that Whitaker fails to prove by clear and convincing evidence that the assumed improper factor was the sole cause of a harsher sentence because it bears a reasonable nexus to relevant and proper sentencing factors.

¶15 We begin with the context in which the circuit court made the challenged comments. Whitaker pled to only one count of sexual assault of a minor despite confessing to hundreds more and received two years of initial confinement.[8] In addressing the egregious facts of this case, and at the behest of the defendant,[9] the circuit court repeatedly considered the enabling behavior of the elder members of Whitaker's childhood community. The sentencing court stated that "the relevant Galleon [sic] factors are punishment, and also deterrence of others, hopefully

---

[7] See Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Typically, an appellate court should decide cases on the narrowest possible grounds.").

[8] Under Wis. Stat. § 973.01(2)(b)1. and (2)(d)1., a Class B felony carries a maximum sentence of 40 years initial confinement and 20 years of extended supervision.

[9] Whitaker asked the circuit court to consider how his upbringing affected his socialization as a mitigating factor. Specifically, Whitaker blamed his upbringing for limiting his sexual education, isolating him from resources, and contributing to a "skewed view" of adolescent development. He also said that it was "important to note that there were adults who were aware of this conduct when it was happening . . . and it was recommended that the allegations remain within the community."

11

deterrence of others in the Amish community." It repeated, "I'm hoping that this sentence deters, as I said, the community," and continued, "a prison sentence is the only way to send the message to Mr. Whitaker and to the community that this is totally unacceptable behavior. . . . And I hope that the elders in the community pay attention to this."

¶16 Whitaker argues that these references to his childhood Amish community lack congruity to his offense and therefore lack a sufficient nexus to relevant and proper sentencing objectives. We disagree. Read in context, the circuit court's efforts to encourage Whitaker's childhood community to report child sexual assaults wholly relate to relevant criminal conduct, both generally and specifically. The circuit court was not addressing a failure to report a one-off crime after the fact; the community elders knew the assaults were ongoing. Their failure to meaningfully intervene directly enabled Whitaker to commit hundreds of additional assaults on his sisters and greatly compounded their harm. As the circuit court stated, it is insufficient to address these crimes internally in the community "when it is not a one-time thing and . . . the women, the daughters, the wives in the Amish community are not empowered to come forward."

¶17 This reasoning touches on valid considerations of general deterrence and protection of the public. We have long accepted that general deterrence is an appropriate sentencing consideration. See Gallion, 270 Wis. 2d 535, ¶61. Here, the sentencing court expressed its desire to generally deter others,

12

specifically others in Whitaker's childhood community, from both committing sexual assaults and refusing to protect victims in the community from sexual violence.  This sentiment was directed at the community members to encourage them to meaningfully intervene by reporting sexual abuse and holding abusers accountable rather than continuing to ignore or conceal the abuse.  Should the community protect victims and hold abusers to account, future potential abusers are likely to be deterred from engaging in this type of abusive conduct.  In other words, the community's meaningful intervention directly relates to the sentencing goal of deterring similar crimes.

¶18 Here, general deterrence logically ties in with a second sentencing goal: public protection.  Much like the goal of deterrence, public protection can be applied both to the individual defendant specifically and to the larger community generally.  This means the court may consider: (1) the need to protect the public from the individual defendant; (2) the need to protect the public from those like the defendant; or (3) both.  See Id., ¶61 (the court properly "took into account the need to protect the public from Gallion and others like him").  As with deterrence, the circuit court in this case was focused on public protection in the general sense.  As noted above, deterring sexual assault through effective community intervention protects victims.  As this case exemplifies, victims of sexual abuse are often powerless to protect themselves.  And in this case the victims' powerlessness was compounded when the family and community elders did little to

13

protect A.B., C.D., and E.F. from Whitaker's unrelenting abuse even after learning of the ongoing assaults. The three victims were left completely defenseless. The circuit court recognized that the victims' protection was dependent on help from the community and encouraged community members to hold offenders like Whitaker to account. In doing so, the circuit court sought to protect victims from further trauma and abuse. The circuit court acted within its discretion to address this failure of protection in hopes of both preventing others from engaging in similar abuse and protecting potential victims in that community from similar conduct.[10]

¶19 For the sake of completeness, we understand the remainder of the court's discussion to be addressing the offenses' seriousness, the effects on the victims, and the need for punishment. The circuit court repeatedly referenced these valid considerations, stating that the "relevant Galleon [sic] factors are punishment, and also deterrence of others," that "punishing Mr. Whitaker for his behavior was critical," that "no confinement would depreciate the seriousness of this offense," and that "a prison sentence is the only way to send the message

---

[10] The sentencing court made other limited references to Whitaker's childhood community unrelated to general deterrence or protection of the public. However, Whitaker does not allege that these limited comments served as anything other than a basis for leniency. For example, the circuit court exempted Whitaker from the sex offender registration requirement, in part because it shifted the blame from Whitaker onto "a community and a family that wasn't protecting the daughters." It also stated that "[Whitaker] was in an Amish community. And so . . . I don't believe he poses a risk."

to Mr. Whitaker . . . that this is totally unacceptable behavior." The circuit court sought to address the sheer number of crimes Whitaker committed, emphasizing that "[i]t was a thousand. It was years of abuse." The circuit court also focused on the victims, calling the facts of their abuse "abhorrent," saying A.B. was "destroyed" by her brother's actions, and stating its hope that Whitaker's sentence may "help the family heal."

¶20 Having reviewed the entire sentencing transcript, we conclude that the circuit court's challenged statements bore a reasonable nexus to the relevant and proper sentencing factors of general deterrence and protection of the public. Nothing in the transcript suggests the circuit court increased Whitaker's sentence solely because of his religious beliefs or his association with the Amish community. See Williams, 381 Wis. 2d 331, ¶53. Therefore, we will not disturb the circuit court's wide sentencing discretion. Id., ¶45.

IV.  CONCLUSION

¶21 Whitaker fails to prove by clear and convincing evidence that the sentencing court erroneously exercised its discretion. His sentence stands.

*By the Court.*—The decision of the court of appeals is affirmed.

¶22 PATIENCE DRAKE ROGGENSACK, J. *(concurring).* There are two constitutionally protected interests presented by the matter before us: Whitaker's associational interest in his childhood community and his interest in the Amish religion.

¶23 The majority opinion assumes, without deciding, that "any consideration of [Westley D.] Whitaker's childhood Amish community was improper" but that its "reasonable nexus to relevant and proper sentencing factors" prevent consideration of Whitaker's childhood community from being the sole cause of a harsher sentence.[1] Although I join the majority opinion in affirming the court of appeals' conclusion that Whitaker's sentence was a proper exercise of the circuit court's sentencing discretion, I write in concurrence.

¶24 The circuit court identified the secretive characteristics of the community in which Whitaker was raised. The circuit court's discussion linked Whitaker's repetitive sexual assaults to the community association established for Whitaker by his parents' choice of where to raise their family. In addition, the circuit court took care to separate the court's understanding that Amish religious principles did not tolerate sexual assault of sisters, as the secretive nature of Whitaker's childhood community had done.

¶25 In this concurrence, I separate what the majority lumps together and characterizes in a general way as "improper"

---

[1] Majority op., ¶14. On review, Whitaker claimed that his sentence was more harsh because the circuit court improperly considered constitutionally protected conduct.

1

consideration into two constitutional interests: characteristics of association with the secretive community and Amish religious principles. I do so for two reasons. First, I conclude that the secretive characteristic of Whitaker's childhood community is a proper factor to consider at sentencing because evidence of his association with this childhood community was relevant to the repetitive nature of the sexual assaults. Dawson v. Delaware, 503 U.S. 159, 160 (1992) (explaining that introduction of evidence that Dawson was a member of the Aryan Brotherhood was prohibited by the First and Fourteenth Amendments because it had no relevance to the issues being decided in the proceeding in which the evidence was admitted). In addition, unless specific evidence about the secretive characteristics of Whitaker's childhood community are identified, establishing a sufficient relationship between a constitutionally protected associational or religious interest and the crime of conviction would be difficult to prove. As the United States Supreme Court has explained, "the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." Id. at 165. However, the evidence must be relevant to the sentencing proceeding. Id.

¶26 Second, the difference between associational characteristics of Whitaker's childhood community and Amish religious principles is important. The majority opinion's lack of separation of two constitutionally protected interests could

2

be interpreted in a way that disparages Amish religious principles. This could occur even though the circuit court did not discuss Amish religious principles, except to say that, "[S]exual assault of sisters is not something that is accepted."

¶27 The freedom to peaceably assemble and to exercise one's choice of religion are protected by the First and Fourteenth Amendments of the United States Constitution and by Article I, Sections 4 and 18 of the Wisconsin Constitution. In order to introduce evidence of associational characteristics of Whitaker's childhood community or of religious practices, such evidence must be relevant to the sentencing proceeding at which it was introduced. Id. at 160.

¶28 In regard to the association of Whitaker as a child in the community in which his family placed him, the secretive characteristics of the community likely had connection to the repetitive nature of his sexual assaults. Apparently, some members of the community knew of the assaults when they were occurring, and they made some attempt to stop them. However, when their efforts were unsuccessful, they took no further action. They did not report the assaults to law enforcement or seek outside help in terminating Whitaker's victimization of his sisters.

¶29 As Whitaker was sentenced, the circuit court took the secretive nature of the community into account in the court's efforts to protect others from similar victimization. The court explained how harmful community silence had been to A.B. "She's

in bed. She can't go to sleep comfortably in her own house. Mr. Whitaker can. Her parents can. But [A.B.] couldn't."

¶30 In order to employ constitutionally protected principles at sentencing for criminal conduct, there must be a reliable connection between constitutionally protected principles and the crime of conviction. State v. J.E.B., 161 Wis. 2d 655, 673, 469 N.W.2d 192 (Ct. App. 1991) (explaining that "the test is whether there is a reliable showing of a sufficient relationship" between a protected principle and the crime). This relationship has been referred to as "congruity" with the crime. Id.

¶31 In the case presented, there is nothing in the record of Whitaker's sentencing that describes Amish religious principles so as to support a factual foundation for concluding that there is "congruity" between Amish religious principles and Whitaker's sexual assaults of his sisters. Furthermore, the circuit court explained that the court was very familiar with the Amish community in which Whitaker was raised, and "sexual assault of sisters is not something that is accepted."

¶32 The circuit court found that the community was secretive, but the court did not imply that this quality was grounded in Amish religious principles rather than community association. There was no expression in the circuit court's sentencing remarks, either overtly or covertly, that Amish religious principles tolerated sexual assault of sisters.

¶33 By contrast, the record is replete with evidence of the secretive characteristics of the community. "So not only

4

was [A.B] destroyed by these acts night after night after night, but she was destroyed by the threats of her beloved older brother. But also she couldn't raise it in her family, or she would be blamed." The circuit court further explained, "I'm hoping that this sentence deters, as I said, the community."

¶34 However, notwithstanding the circuit court's sentencing remarks, the majority concludes by combining both "his religious beliefs" and "his association with the Amish community" into one sentence with one conclusion.[2] Religious principles and associational characteristics do not stand on the equal factual footing in this record. Stated otherwise, there is no factual foundation in the record for treating community associational characteristics and Amish religious principles as interchangeable. Evidence of secretive characteristics of the community was relevant to Whitaker's sentencing; therefore, it was properly admitted and employed by the circuit court in its sentencing decision. Dawson, 503 U.S. at 165. Because the majority opinion does not address the two constitutional interests that were identified based on the factual record presented, I respectfully concur.

¶35 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence.

---

[2] Majority op., ¶20.

¶36 REBECCA GRASSL BRADLEY, J. *(concurring).* This court correctly concludes the circuit court did not erroneously exercise its sentencing discretion. The majority reasons "nothing in the transcript suggests the circuit court increased Whitaker's sentence <u>solely because of</u> his religious beliefs or his association with the Amish community."[1] Phrasing a court's sentencing discretion in such terms suggests a court <u>may</u> consider religious beliefs, the exercise of any other constitutional right, or some other improper factor as a basis for enhancing a sentence. Doing so would be improper. "When imposing sentence, a circuit court cannot rely on inaccurate information, race or national origin, gender, alleged extra-jurisdictional offenses, or the defendant's or victim's religion." <u>State v. Williams</u>, 2018 WI 59, ¶46, 381 Wis. 2d 661, 912 N.W.2d 373 (citing <u>State v. Alexander</u>, 2015 WI 6, ¶¶18, 23, 360 Wis. 2d 292, 858 N.W.2d 662); <u>see also</u> <u>State v. Dalton</u>, 2018 WI 85, ¶61, 383 Wis. 2d 147, 914 N.W.2d 120 ("Established case law indicates that [it] is impermissible" for a defendant to be "criminally punished for exercising his constitutional right"); <u>State v. Ninham</u>, 2011 WI 33, ¶96, 333 Wis. 2d 335, 797 N.W.2d 451 ("[A] circuit court may not base its sentencing decision upon the defendant's or the victim's religion.").

¶37 To the extent the "solely because of" language could be misconstrued to sanction a sentencing court's reliance on an improper factor so long as it is bundled with proper factors, I

---

[1] Majority op., ¶¶3, 20 (emphasis added).

1

disagree with the majority's application of the phrase.[2] An improper factor such as a defendant's religious beliefs or exercise of a constitutional right may not form even part of the basis for a sentence, and a bundling approach does not ameliorate the resulting constitutional infringement.

¶38 We first applied this language in Buckner v. State, reasoning, "A defendant cannot receive a harsher sentence solely because he availed himself of one of his constitutional rights." 56 Wis. 2d 539, 550, 202 N.W.2d 406 (1972) (citing Baker v. United States, 412 F.2d 1069 (5th Cir. 1969), certiorari denied, 396 U.S. 1018 (1970)). In that case, the defendant alleged his sentence violated his constitutional right against self-incrimination "due to the trial court's remarks concerning defendant's exercise of his right to remain silent." Id. We concluded the trial court's comments about the defendant's initial failure to cooperate were not an erroneous exercise of discretion.[3] We explained:

> "Where the judicial sentencing discretion is exercised
> on the basis of clearly irrelevant or improper

---

[2] Id., ¶¶3, 20. See also id., ¶14 ("[W]e hold that Whitaker fails to prove by clear and convincing evidence that the assumed improper factor was the sole cause of a harsher sentence because it bears a reasonable nexus to relevant and proper sentencing factors.").

[3] We also concluded the circuit court did not erroneously exercise its discretion by mentioning that the defendant was from Chicago, because the defendant "cites no authority and attempts no showing that the trial court relied, in its determination of the proper sentence," upon that fact, and because the record showed "the trial court was making a general protestation against the rise in callousness for human life." Buckner v. State, 56 Wis. 2d 539, 552, 202 N.W.2d 406 (1972).

2

factors, an abuse of discretion also results." It does not automatically follow, however, that an off-hand reference to a consideration indicates the trial court must have utilized it in his sentencing deliberations. The quoted exchange was probably prompted by defense counsel's plea for a minimal concurrent sentence. Nowhere is it indicated "clearly" that the trial court increased defendant's sentence because the defendant exercised his right to remain silent.

Id. at 550–51 (quoting McCleary v. State, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971)).

¶39 Notably, the only case Buckner cited in support of its "solely because" language——Baker——neither used those terms nor stood for that proposition at all. In Baker, two men captured after a bank robbery pleaded guilty and were given ten year sentences, while a third man pleaded not guilty and received a fifteen year sentence for aiding and abetting the robbery. Baker, 412 F.2d at 1070. The third man challenged his conviction on multiple grounds, including that he received a longer sentence because he decided to stand trial. Id. at 1073.

¶40 Declining to review the sentence, the Fifth Circuit explained, "An accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to stand trial rather than plead guilty." Id. (citing Thomas v. United States, 368 F.2d 941 (5th Cir. 1966); United States v. Martell, 335 F.2d 764 (4th Cir. 1964); United States v. Wiley, 278 F.2d 500 (7th Cir. 1960)). The court reasoned the sentence was within the statutory limits and "no showing [was] made that appellant received a longer sentence because he required the government to try him. He relies on the fact that he, an aider and abettor who pleaded not guilty, received a

3

longer sentence than the two men who pleaded guilty to actually going into the bank. But an aider and abettor is a principal to the crime." Id. There is nothing in Baker about the appellant's exercise of his right to trial forming a basis of the sentence.

¶41 Despite its suspect origin and overall inaccuracy, this language persists in some of our sentencing cases. See, e.g., State v. Dodson, 2022 WI 5, ¶10, 400 Wis. 2d 313, 969 N.W.2d 225 ("Therefore, a defendant will fall short of proving actual reliance if the transcript lacks clear and convincing evidence that the factor was the sole cause of a harsher sentence." (citing Williams, 381 Wis. 2d 661, ¶¶45-46, 53)).

¶42 In this case, the majority relies in part on State v. Williams, 381 Wis. 2d 661, in which we used the "solely because" language in the context of restitution. The defendant in Williams alleged "the sentencing court improperly increased his sentence because he exercised his right to object to restitution." Id., ¶1. We held the sentencing court did not erroneously exercise its discretion "[b]ecause the circuit court's reference to restitution at Williams' sentencing was directly linked to a proper sentencing consideration──Williams' lack of remorse[.]" Id., ¶44. We explained, "[w]hen imposing sentence, a circuit court cannot rely on inaccurate information, race or national origin, gender, alleged extra-jurisdictional offenses, or the defendant's or victim's religion." Id., ¶46 (citing Alexander, 360 Wis. 2d 292, ¶¶18, 23). "In addition, a circuit court may not impose 'a harsher sentence solely because

4

[a defendant] availed himself of one of his constitutional rights,' . . . or vindictively impose a harsher sentence when a defendant has succeeded in getting his first sentence vacated or overturned by exercising his appellate rights." Id. (citing Buckner, 56 Wis. 2d at 550; State v. Church, 2003 WI 74, ¶¶1, 28-39, 262 Wis. 2d 678, 665 N.W.2d 141). "Outside of these prohibitions, the circuit court has 'wide discretion in determining what factors are relevant' and what weight to give to each factor." Id., ¶47 (quoting State v. Gallion, 2004 WI 42, ¶68, 270 Wis. 2d 535, 678 N.W.2d 197).

¶43 Williams did not involve the exercise of any constitutional right, but instead centered on the defendant's refusal to stipulate to restitution. Because the right to challenge restitution is statutory, we explained "a sentencing court should not vindictively increase a defendant's sentence based solely on his decision to challenge restitution," but "Williams fail[ed] to demonstrate by clear and convincing evidence that his position on restitution was an improper sentencing factor." Id., ¶49 (internal citations omitted). The circuit court's restitution discussion "did not stand alone as an independent factor in the sentencing transcript. Rather, the circuit court's sole reference to restitution came toward the end of the circuit court's sentencing remarks and was intertwined with its consideration of Williams' character and lack of remorse, as evidenced only in part by Williams' position that he was not responsible for restitution." Id., ¶50.

5

¶44 We emphasized in Williams that "[s]entencing courts may not vindictively punish a defendant solely for exercising a constitutional right."[4] Id., ¶51 (citing Alabama v. Smith, 490 U.S. 794, 798-801 (1989); Church, 262 Wis. 2d 678, ¶¶28-39). "But when the restitution factor is inextricably intertwined with a defendant's character and lack of remorse, its consideration is proper." Id. "The restitution factor at issue here was not Williams' decision to challenge restitution, or the fact that his challenge was successful, but rather Williams' disavowal of responsibility . . . . Under these circumstances, Williams failed to convince us that the sentencing court's single reference to restitution constituted an improper factor." Id.

¶45 Although we determined the restitution remark in Williams did not constitute an improper sentencing factor, we also concluded "Williams failed to establish actual reliance" because "[n]othing in the transcript suggests the circuit court increased Williams' sentence solely because he challenged restitution." Id., ¶53. Instead, "[t]he sole reference to restitution bore a reasonable nexus to the relevant factor of Williams' lack of remorse. In context, the circuit court in no way tied the length of the sentence to Williams' exercise of his statutory right to challenge restitution." Id. (citing State v.

---

[4] The "right to challenge restitution arises from our statutes, not the constitution," but we acknowledged in Williams that defendants "have a constitutional due process right not to be sentenced based on improper factors upon which a court actually relies." State v. Williams, 2018 WI 59, ¶51 n.15, 381 Wis. 2d 661, 912 N.W.2d 373 (citations omitted).

6

<u>Harris</u>, 2010 WI 79, ¶¶4, 59, 67, 326 Wis. 2d 685, 786 N.W.2d 409).

¶46 With this background in mind, we arrive at the present case. The majority explains its rationale as follows:

> To prove "actual reliance" on an improper factor, a defendant must show that the circuit court made the improper factor a part of the "basis for the sentence." <u>Dodson</u>, 400 Wis. 2d 313, ¶10. We have interpreted this to mean that a defendant must show that the circuit court "impose[d] 'a harsher sentence solely because'" of the improper factor. <u>State v. Williams</u>, 2018 WI 59, ¶¶46, 53, 381 Wis. 2d 661, 912 N.W.2d 373 (quoting <u>Buckner v. State</u>, 56 Wis. 2d 539, 550, 202 N.W.2d 406 (1972)); <u>see, e.g.</u>, <u>State v. Dalton</u>, 2018 WI 85, 383 Wis. 2d 147, 914 N.W.2d 120 (holding that a circuit court impermissibly imposed a harsher sentence solely because the defendant exercised his constitutional right to refuse to submit to a warrantless blood draw). To be the "sole" cause of a harsher sentence, an improper factor must "stand alone as an independent factor." <u>See Williams</u>, 381 Wis. 2d 661, ¶50. That means a circuit court's reliance on an improper factor cannot be cured by additionally relying on other proper, but unrelated, sentencing considerations. However, if a circuit court's reference to a challenged factor bears "a reasonable nexus" to a proper sentencing factor, then the circuit court has not imposed sentence based "solely" on the improper factor. <u>Id.</u>[5]

¶47 The majority understandably attempts to cabin the "solely because of" language in order to avoid implying that the circuit court may rely on an improper factor in sentencing, but in the context of a defendant's religious beliefs or exercise of a constitutional right, the majority's efforts fall short. The majority's conclusion that "nothing in the transcript suggests the circuit court increased Whitaker's sentence solely because

---

[5] Majority op., ¶13.

7

of his religious beliefs or his association with the Amish community[,]"[6] could be misconstrued to authorize a circuit court's reliance on an improper factor if that factor is not the only one upon which the sentence is based. The Constitution does not permit a court to increase a sentence because of a defendant's exercise of his First Amendment rights——regardless of how many proper factors contribute to the sentencing decision.

¶48 In Ninham, this court correctly stated the test: "[A] circuit court may not base its sentencing decision upon the defendant's or the victim's religion." Ninham, 333 Wis. 2d 335, ¶96. Even more recently, we said "[w]e have already decided that certain factors are improper for the circuit court to consider at sentencing and therefore violate a defendant's right to due process: race or national origin, gender, alleged extra-jurisdictional offenses, and the defendant's or victim's religion. Alexander, 360 Wis. 2d 292, ¶23. Neither case suggested a circuit court may increase a sentence based on a defendant's religion so long as the sentencing decision encompasses valid factors.

¶49 In this case, nothing in the sentencing court's remarks suggests the court increased Whitaker's sentence because of his religious beliefs. Far from indicating any hostility toward the Amish religion, the sentencing judge mentioned that she lived "in the midst of an Amish community. They're my neighbors" and "sexual assault of sisters is not something that

---

[6] Id., ¶3.

is accepted." Neither Whitaker nor the State suggests the Amish religion tolerates either child sexual assault or the failure to protect children from it. Whitaker was sentenced based on his conduct, not because he happened to be Amish when he sexually assaulted his sisters. The circuit court's sentence was designed to deter others from committing child sexual assaults or from facilitating such crimes by their silence or inaction—whether Amish or atheist. There is nothing improper about such a sentencing objective.

¶50 For the foregoing reasons, I concur.

¶51 BRIAN HAGEDORN, J. *(concurring)*. The analytical framework utilized in sentencing cases like this one deserves a closer look. Nevertheless, I join the majority opinion because it correctly applies our precedent and reaches the correct outcome.