COURT OF APPEALS
DECISION
DATED AND FILED

March 8, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1422-CR**

Cir. Ct. No. 2019CF100

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRIAN R. SULLIVAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Brian R. Sullivan appeals a judgment of conviction entered on a jury's verdicts for two counts of homicide by intoxicated use of a vehicle.  He also appeals an order denying his motion for postconviction relief. Sullivan challenges the sufficiency of the evidence to support his conviction and the circuit court's exercise of its sentencing discretion.  We reject his arguments and affirm.

## BACKGROUND

¶2    Sullivan was convicted following a five-day jury trial of two counts of homicide by intoxicated use of a vehicle.[1]  The evidence at trial established that on a clear evening on Lake Winnebago in April 2018, two boats collided at approximately 8:38 p.m.  One boat was being operated by Sullivan; the other by K.L.[2]  K.L.'s daughters were thrown from the boat in the collision and were found deceased in the water the following day.

¶3    When Sullivan reached shore, police interviewed him about the crash.  The interviewing detective smelled alcohol on Sullivan and asked about his drinking activity that evening.  Sullivan initially told police he had four beers during the day.  Sullivan later that evening told police he had his last drink during

---

[1] Consistent with WIS. STAT. § 940.09(1m)(b) (2017-18), two counts of homicide by intoxicated use of a vehicle with a prohibited alcohol concentration were dismissed after the court received the jury's verdicts.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Consistent with the policy underlying WIS. STAT. RULE 809.86, we use initials to identify the victims.

dinner. His blood was drawn at 12:07 a.m. on the morning following the collision, at which time Sullivan had a .093 blood alcohol concentration (BAC).

¶4 At trial, Sullivan testified he had lied to police about his drinking activity. He testified that he had consumed three vodka drinks and two beers between 12:45 p.m. and 5:00 p.m. Sullivan testified he had a beer with dinner, ending at approximately 6:45 p.m. He then added that he had another three- or four-ounce vodka drink at approximately 7:15 p.m., which he consumed preceding the collision.

¶5 The critical issues at trial were the degree of Sullivan's intoxication at the time of the accident, the circumstances of the accident, and whether the accident would have occurred even if Sullivan was exercising due care at the time.[3] There was considerable expert testimony regarding boating rules, crash reconstruction, and toxicology.

¶6 The State's toxicologist, Lorrine Edwards, testified regarding the results of her analysis of Sullivan's blood sample and the pharmacology of alcohol. Using the .09 test result as a baseline, Edwards provided a range of possible BACs for Sullivan at the time of the crash given his various claims about his consumption activities that day. In particular, Edwards testified that if Sullivan had stopped drinking at approximately 6:45 p.m., as he initially claimed, his BAC would have been between .12 and .17 at the time of the collision.

---

[3] *See* WIS. STAT. § 940.09(2)(a) (2017-18) (providing an affirmative defense if the defendant proves "that the death would have occurred even if he or she had been exercising due care and he or she had not been under the influence of an intoxicant").

¶7 The prosecutor then questioned Edwards about Sullivan's BAC at the time of the crash given his new assertion that he had consumed a three- to four-ounce vodka drink in the hour prior to it. Edwards qualified her answers by noting that she could provide only an estimate in light of the uncertainty of the pace of consumption and the rate at which the alcohol would have been absorbed into Sullivan's circulatory system. Edwards concluded three to four ounces of vodka would have subtracted approximately .048 to .064 from her earlier estimate. Assuming none of the alcohol had been absorbed—an assumption she found very unlikely—Edwards estimated that a three-ounce drink would have resulted in a BAC of between .07 and .11 at the time of the crash, while a four-ounce drink would have resulted in a BAC of between .08 and .12 at the time of the crash.

¶8 Edwards was questioned about the validity of her estimates. She testified, "I'm comfortable with the range that I give based on my training and experience but I can't ever say with certainty that this is the absolute range, and that's why I have to hang my hat on the test result because that is a definitive result." Edwards concluded Sullivan's BAC was very likely above .08 even if his trial account of his consumption was accurate, as "[t]he last cocktail that is hypothetically consumed even fully absorbed is not enough to get to my test result, let alone[] account for all of the alcohol that was metabolized in that 3-1/2 hours before the blood draw."

¶9 Sullivan presented his own toxicology expert, James O'Donnell, who criticized Edwards's analysis. He challenged Edwards's testimony that generally eighty percent of an alcoholic drink will be absorbed within thirty minutes of intake. He estimated the range was between thirty minutes and one hour, and even longer for individuals with a full stomach. O'Donnell concluded Sullivan's BAC was between .068 and .071 at the time of the collision. His

analysis assumed that Sullivan had in fact consumed three to four ounces of vodka in the approximately one hour preceding the crash. Therefore, O'Donnell opined that at the time of the crash, Sullivan was still in the absorption phase and the retrograde extrapolation Edwards had performed was not appropriate.

¶10 The circuit court denied defense motions to dismiss at the close of the State's case and at the close of the evidence. The court imposed concurrent sentences each consisting of three years' initial confinement and three years' extended supervision. Sullivan filed a postconviction motion. Following a hearing, the court denied Sullivan's requests for a new trial and for sentence modification. Sullivan now appeals, challenging the sufficiency of the evidence and the court's exercise of sentencing discretion.

## DISCUSSION

*I. Sufficiency of the Evidence*

¶11 "When a defendant challenges a verdict based on sufficiency of the evidence, we give deference to the jury's determination and view the evidence in the light most favorable to the State." *State v. Coughlin*, 2022 WI 43, ¶24, 402 Wis. 2d 107, 975 N.W.2d 179. We will adopt the inferences that support the conviction and will not substitute our own judgment for the jury's unless the evidence is so lacking in probative value and force that no reasonable jury could have concluded, beyond a reasonable doubt, that the defendant was guilty. *Id.*

¶12 We first consider Sullivan's argument that the State failed to present sufficient evidence that his BAC was at or over .08 or that he was operating a vehicle while under the influence of an intoxicant at the time of the accident. Sullivan argues Edwards was incompetent to render an expert opinion on anything

other than the fact that the blood drawn at 12:07 produced a .093 result. As a result, Sullivan argues the State failed to offer any credible evidence that rendered O'Donnell's opinion "inherently improbable." Sullivan contends the jury was therefore not free to disregard O'Donnell's testimony, his opinions should have been accepted as true, and the jury was required to acquit Sullivan based on a failure of proof.

¶13    As the State notes, Sullivan's brief-in-chief appears to be an attack upon the admissibility of Edwards's testimony. Indeed, Sullivan goes so far as to cite WIS. STAT. § 907.02 and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), when describing the supposedly problematic nature of Edwards's opinions. As the State points out, however, no contemporaneous objection was made to her testimony.[4] To the extent Sullivan attempts to contest admissibility now on appeal, that argument has been forfeited. *See State v. Cameron*, 2016 WI App 54, ¶17, 370 Wis. 2d 661, 885 N.W.2d 611. As a corollary, the failure to challenge expert testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), causes a party to forfeit the right to raise post-trial objections to the substance of expert testimony. *Cameron*, 370 Wis. 2d 661, ¶12.

¶14    In his reply brief, Sullivan disclaims any intent to challenge admissibility, asserting his "discussion of the *Daubert* standard and … WIS. STAT. § 907.02 was intended to demonstrate how and why Ms. Edwards' opinion was problematic and unreliable, in addition to lacking any level of certainty satisfying

---

[4] Sullivan's defense counsel interposed one objection when the prosecutor asked Edwards about whether she had an opinion "whether it's likely that the … blood level in this case was above a .08?" Counsel requested additional foundation, and the circuit court sustained the objection. Thereafter, the prosecutor recast the question as soliciting Edwards's "scientific opinion." No further objections were made to Edwards's testimony on these issues.

the necessary burden of proof." We reject this assertion and conclude that the trial evidence, including Edwards's scientific opinion regarding the possible range of Sullivan's BAC at the time of the crash, was sufficient evidence upon which to find Sullivan guilty.

¶15 The dispute at trial regarding the degree of Sullivan's intoxication hinged on a few key points. First, the jury had to decide whether Sullivan was being honest at any point in time about the amount of alcohol he had consumed on the day of the crash. It is undisputed that Sullivan lied at some point: to police when he first claimed he had stopped drinking at 6:45 p.m.; or to the jury when he claimed he had consumed an additional three- to four-ounce vodka drink in the hour prior to the accident. This determination was strictly a matter of credibility, which is a determination for the fact finder. *See Adams Outdoor Advert., Ltd. v. City of Madison*, 2006 WI 104, ¶27, 294 Wis. 2d 441, 717 N.W.2d 803.

¶16 Second, that credibility assessment materially affected the weight and credibility to be given to the opinions of the expert witnesses. *See id.* O'Donnell's expert testimony regarding Sullivan's likely BAC assumed that Sullivan's later account of consuming a three- to four-ounce drink just before the crash was true. The prosecutor in closing arguments specifically urged the jury to reject O'Donnell's testimony on this basis, arguing, "I think a reason to distrust Dr. O'Donnell's opinion is it is based on the defendant's own words which are unreliable as we'll see."

¶17 Viewing the evidence in the light most favorable to the conviction, as we must, the jury could have reasonably rejected Sullivan's trial description of his consumption activities, therefore giving no weight to the testimony of his expert. Relatedly, the jury could have concluded Sullivan was being truthful when

he told police he stopped drinking at 6:45 p.m., and therefore concluded that his BAC was in line with Edwards's testimony, approximately .12 to .17 at the time of the crash. On this record, we conclude the evidence was such that a reasonable jury could have concluded, beyond a reasonable doubt, that Sullivan was intoxicated at the time of the crash.

¶18   The objections to Edwards's testimony that Sullivan lays out on appeal are unpersuasive. First, given the foregoing, the jury could have reached a finding of guilt even without Edwards's allegedly flawed testimony about Sullivan's possible BAC following a three- to four-ounce vodka drink. Second, to the extent her testimony was flawed, it was fair game for cross-examination. Finally, with Sullivan having disclaimed on appeal any challenge to admissibility, the weight to be given to Edwards's testimony was a matter for the fact finder to decide. This court is not the arbiter of the accuracy of dueling experts.[5]

¶19   Sullivan emphasizes that the evidence "must be sufficiently strong and convincing to exclude every reasonable hypothesis consistent with the defendant's innocence in order to meet the demanding standard of proof beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 502, 451 N.W.2d 752 (1990). Notably, *Poellinger* made clear that this is the standard *the jury* must apply and is "not the test on appeal." *Id.* at 503. *Poellinger* also made clear that the standard "does not mean that if any of the evidence brought forth at trial suggests innocence, the jury cannot find the defendant guilty." *Id.* at 503. Rather,

---

[5] To this point, we offer no opinion about whether Edwards's testimony was accurate. Even the prosecutor seemed to acknowledge that her testimony was difficult to follow, offering in closing argument: "Now, how does Ms. Edwards explain the blood evidence in this case? First of all, I'll say probably not very well and probably not very well because of me."

"the rule that the evidence must exclude every reasonable hypothesis of innocence refers to the evidence which the jury believes and relies upon to support its verdict." *Id.* As explained above, the jury could have reasonably concluded that Sullivan was lying at trial and credited the State's expert testimony that he was intoxicated at the time of the collision.

¶20     Sullivan's next sufficiency-of-the-evidence challenge is not so much that, but a challenge to the prosecutor's statements during closing arguments about his affirmative defense.[6]   Indeed, he cites the premier case for prosecutorial misconduct at trial, ***Berger v. United States***, 295 U.S. 78 (1935).   Sullivan, however, did not interpose a single objection to the prosecutor's closing argument at trial.   And while we may review constitutional matters despite the lack of a contemporaneous objection, *see* ***State v. Saunders***, 2011 WI App 156, ¶29 n.5, 338 Wis. 2d 160, 807 N.W.2d 679, Sullivan's arguments here are merely conclusory assertions and do not establish that any allegedly inappropriate commentary "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *see* ***State v. Bell***, 2018 WI 28, ¶15, 380 Wis. 2d 616, 909 N.W.2d 750 (citation omitted).[7]

---

[6] Sullivan also attacks Edwards's expert testimony regarding his degree of intoxication as part of his arguments regarding his affirmative defense.  It is unclear what significance her testimony has on that point, and Sullivan's reasoning is difficult to follow.  To the extent Sullivan intended to raise an argument that we have not addressed, we deem it insufficiently developed. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

[7] To the extent Sullivan provides specific examples of topics where he believes the prosecutor overstepped the permissible bounds of commentary, we are unpersuaded.  As the State sets forth, Sullivan overreads or mischaracterizes many of the prosecutor's comments.  Other of the prosecutor's comments or strategies were clearly permissible; for example, there is no merit to Sullivan's claim that the prosecutor acted inappropriately by commenting on "how the defense experts were compensated and attacking the veracity of Sullivan, his wife and other witnesses, [in particular] about what they did and drank that day."

(continued)

¶21     Sullivan's argument fares no better even if analyzed strictly using sufficiency-of-the-evidence principles.  He argues:

> The testimony, conclusions, and demonstrative video exhibits of both the State's and the defense accident reconstruction, boat operation and visibility experts all dove-tail with each other that the collision between the [K.L.'s] boat and the Sullivan boat, given how both drivers were looking ahead of them, in the final minute before the collision, made the accident both unavoidable by that time and inevitable.

Sullivan likens this case to "a child darting out unexpectedly from between parked cars at night."  Accordingly, he argues the jury (and, by extension, the circuit court) had no obligation but to acquit him of the homicide offenses.

¶22     WISCONSIN STAT. § 940.09(2)(a) (2017-18) provides an affirmative defense if the defendant proves by a preponderance of the evidence "that the death would have occurred even if he or she had been exercising due care and he or she had not been under the influence of an intoxicant."  The statute incorporates case law establishing that the defendant's own negligence is not a defense.  *State v. Raczka*, 2018 WI App 3, ¶11, 379 Wis. 2d 720, 906 N.W.2d 722 (2017).

¶23     Sullivan's arguments on this point generally take the witness testimony (and inferences therefrom) in the light most favorable to him, which is not our standard of review in a sufficiency-of-the-evidence challenge.  Rather, as

---

We also cannot let pass without comment Sullivan's assertion that "the prosecutor argued that despite the facts of record, the jury should dispense with the affirmative defense in their deliberations."  The prosecutor did no such thing.  In fact, he suggested to the jury during closing arguments that the affirmative defense should be the *first* thing they address during their deliberations.  Though the prosecutor urged the jury to reject the affirmative defense and find that "[i]f the defendant had been exercising due care, scanning 10 to 2, this crash doesn't happen," he did not urge the jury to ignore the affirmative defense as Sullivan suggests.

the State observes, the issue was not whether Sullivan saw K.L.'s boat in time to avoid the collision; he clearly did not. The issue was whether Sullivan demonstrated as a matter of law that the crash was unavoidable even if he had been exercising due care and was not intoxicated.

¶24 On that point, there was testimony from both Department of Natural Resources warden Patrick Neal and Sullivan's defense expert, James Sobek, that would have allowed the jury to conclude the collision could have been prevented had Sullivan exercised reasonable care. Neal opined that operating a watercraft is much different than driving a car and operators should "basically [be] watching where they're going or have their heads on [a] swivel." He testified that if Sullivan was doing this, assuming both boats were properly lit, Sullivan should have seen K.L.'s boat approaching.[8] The navigational lights on K.L.'s vessel should have been visible "[i]f the operator is paying attention." And Neal testified that K.L.'s boat was the "stand-on vessel" and had the right of way. If Sullivan had seen K.L.'s boat, he would have been required to yield.

¶25 Sullivan characterizes Sobek's testimony as an opinion that the collision was inevitable "[g]iven how both operators were looking forward, and not scanning further to their periphery, in the moments before the collision." Yet Sobek largely concurred with Neal's assessment that the boat operators should have been keeping a more thorough lookout. He testified, "Mr. Neal used the phrase that is a good description that you need to have your head on a swivel. You need to be looking here and back here and not just within [these] plus or minus 25

---

[8] The prosecutor acknowledged when asking the question that "the jury is going to have to figure out if everybody's lights were on in this case."

11

or plus or minus 60 [degree angles] …. You need to maintain situational awareness as you are operating a boat." Sobek testified that it was "[p]retty close to [a] certainty" that if each of the boat operators had looked and concentrated at the areas even within forty-five degrees of straight ahead, they would have been able to see each other and avoid the collision.[9] But if the operators were looking forward and scanning only within ten or twenty-five degrees to either side, it was unlikely they would have noticed the other boat in time. Sobek's opinion was that proper visual scanning even thirty seconds prior to the accident would have allowed Sullivan to perceive K.L.'s approaching boat and see the white and red navigational lights.

¶26 As the foregoing demonstrates, there was sufficient testimony from which the jury could conclude that the accident was avoidable had Sullivan been exercising due care and had he not been intoxicated. Sullivan was not entitled to a judgment of acquittal as a matter of law based on the WIS. STAT. § 940.09(2)(b) (2017-18) affirmative defense.

*II. Exercise of Sentencing Discretion*

¶27 Sullivan next argues the circuit court erroneously exercised its sentencing discretion by emphasizing general deterrence and the seriousness of the offense. We review a court's sentencing decision for an erroneous exercise of discretion. *State v. Whitaker*, 2022 WI 54, ¶11, 402 Wis. 2d 735, 976 N.W.2d 304. Sentencing factors are proper when they inform valid sentencing objectives,

---

[9] Sullivan clearly believes this degree of scanning was unreasonable to require of a boat operator. However, the amount of due care to be exercised under the circumstances was a factual matter for the jury's determination. We perceive no basis to second-guess the jury's determination that the collision was preventable in the exercise of due care.

which include the protection of the community, punishment or rehabilitation of the defendant, and deterrence to others. *Id.*, ¶12 (citing *State v. Gallion*, 2004 WI 42, ¶40, 270 Wis. 2d 535, 678 N.W.2d 197). The primary factors informing those objectives are the gravity of the offense, the character of the offender, and the need to protect the public. *Id.* A host of secondary factors can also be relevant, as *Whitaker* sets forth. *See id.* (citing *Gallion*, 270 Wis. 2d 535, ¶43 n.11).

¶28 Contrary to Sullivan's argument, we do not perceive the circuit court's sentences as being "incorrect factually, analytically, as well as on the applicable law." We begin with the facts. For the reasons previously stated, we reject Sullivan's claim that this was simply an unavoidable accident in which "neither boat driver saw the other until it was too late."

¶29 Analytically, Sullivan fails to identify any point at which the circuit court deviated from appropriate sentencing considerations. At the outset of its sentencing remarks, it recognized the three primary sentencing factors. It acknowledged it was required to impose a sentence with the minimum amount of custody or confinement consistent with those factors. The court also acknowledged many mitigating factors, and it concluded that Sullivan was not a risk to the public nor did he require treatment in the correctional system. However, the court determined that given that two young women had died, it would unduly depreciate the seriousness of the offenses to impose probationary sentences. The court further remarked that its concurrent six-year sentences advanced the goal of general deterrence.

¶30 Sullivan argues the circuit court erroneously exercised its sentencing discretion because there is scant empirical evidence that deterrence through the imposition of criminal sanctions works well. As set forth above, deterrence is a

well-established consideration for sentencing. *Whitaker*, 402 Wis. 2d 735, ¶12. Even Sullivan characterizes it as a "pillar of the criminal justice system."

¶31 Moreover, though the court colorfully stated deterrence was "the only reason why you're going to prison," taken in context this comment was clearly meant to acknowledge Sullivan's many positive attributes. Immediately thereafter, the court again stated that a probationary sentence would be inappropriate given that two individuals had lost their lives as a result of Sullivan's criminal conduct. There is no merit to Sullivan's assertion that the court placed improper weight on deterrence.

¶32 Sullivan also claims the circuit court failed to adequately explain its sentence. We disagree. As set forth above, the court articulated on the record appropriate sentencing objectives and factors. The weight to be attached to those factors is within the circuit court's sound discretion. *State v. Evers*, 139 Wis. 2d 424, 452, 407 N.W.2d 256 (1987). Here, the court stated precisely why it was ordering Sullivan to serve a prison term. Moreover, given the balancing of considerations the circuit court performed on the record, we conclude the court did not erroneously exercise its discretion when it sentenced him to a total term of imprisonment of six years for homicide offenses that exposed Sullivan to potentially decades of imprisonment. *See* WIS. STAT. § 939.50(3)(d) (2017-18) (establishing a maximum of twenty-five years' imprisonment for Class D felonies).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.