**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 19, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP110**

**STATE OF WISCONSIN**

Cir. Ct. No.  2016CF142

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

CHRIS MICHAEL SHAUGHNESSY,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for St. Croix County: SCOTT J. NORDSTRAND, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Chris Shaughnessy appeals from an order denying his postconviction motion for resentencing.  Shaughnessy argues that the State

breached the plea agreement during its sentencing argument and that the circuit court[1] relied on inaccurate information and improper factors when imposing his sentence. Shaughnessy further asserts that his trial attorney was constitutionally ineffective by failing to object to these alleged errors and by emphasizing negative information about Shaughnessy during his sentencing argument. In addition, Shaughnessy argues that the postconviction court erred by denying his postconviction motion without holding a *Machner*[2] hearing. We reject these arguments and affirm.

## BACKGROUND

¶2     The State charged Shaughnessy with one count of second-degree sexual assault of a child and one count of sexual exploitation of a child. The charges were based on allegations that forty-four-year-old Shaughnessy had sexually assaulted fifteen-year-old Carly.[3] Carly was a friend of Shaughnessy's daughter, had previously dated Shaughnessy's son, and had lived in Shaughnessy's home for almost two years.

¶3     According to the amended complaint, in February 2016, a mandatory reporter contacted law enforcement regarding Carly, who was being treated in a Minnesota hospital for the use of controlled substances. The reporter told law

---

[1] The Honorable Eric J. Lundell sentenced Shaughnessy. We refer to Judge Lundell as the circuit court. The Honorable Scott J. Nordstrand denied Shaughnessy's motion for postconviction relief. We refer to Judge Nordstrand as the postconviction court.

[2] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2021-22), we use a pseudonym when referring to the victim in this case. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

enforcement that Carly "had been using methamphetamine and prescription medication, allegedly provided to her by [Shaughnessy]." The reporter also stated that Carly's parents had accessed her Facebook Messenger log and had discovered sexually explicit messages between Carly and Shaughnessy.

¶4 Carly's mother subsequently told law enforcement that she believed Shaughnessy had supplied Carly with methamphetamine. Carly's mother also provided copies of Facebook messages between Carly and Shaughnessy, in which Shaughnessy stated he was "thinking about coming over and tearing up that pussy."

¶5 Investigators then executed a search warrant at Shaughnessy's residence and seized several items, including a cell phone and SD card. On the phone, investigators found a video that showed Shaughnessy fondling Carly's bare breasts with one hand while his other hand was on his bare, erect penis. Investigators also located additional Facebook messages on the phone, in which Carly and Shaughnessy discussed Carly sneaking out of her mother's home to meet Shaughnessy. In another conversation, Shaughnessy told Carly to "tighten up your cock washer" and then told her to "erase all of these messages NOW." Investigators also found a video that showed Carly and Shaughnessy embracing and kissing on the lips. In addition, investigators recovered a pair of women's underwear, and DNA testing indicated that Shaughnessy "was the source of the sperm fragments on the underwear and [Carly] was included as a possible contributor to the non-sperm fragments."

¶6 Shaughnessy's trial attorney filed a motion to suppress evidence. The motion alleged that law enforcement had searched the entirety of Shaughnessy's phone and SD card, including photo and video files, and that the

general search exceeded the scope of the warrant. Shaughnessy therefore sought suppression of all audio or visual media found on the phone and SD card.

¶7 After Shaughnessy filed his suppression motion, the parties reached a plea agreement. Under the agreement, Shaughnessy agreed to withdraw his suppression motion and plead guilty to second-degree sexual assault of a child. In exchange, the sexual exploitation of a child charge would be dismissed and read in, along with additional charges in two other cases. The plea agreement further provided that the parties would jointly recommend a ten-year sentence, comprised of five years' initial confinement followed by five years' extended supervision.

¶8 The circuit court accepted Shaughnessy's guilty plea to second-degree sexual assault of a child and found him guilty of that offense. The court then ordered a presentence investigation report (PSI). The PSI author recommended a thirteen-year sentence, comprised of nine years' initial confinement followed by four years' extended supervision. At sentencing, both the State and Shaughnessy asked the court to impose five years' initial confinement and five years' extended supervision, consistent with the plea agreement. The court exceeded the joint recommendation, however, and imposed a twenty-five-year sentence, comprised of fifteen years' initial confinement followed by ten years' extended supervision.

¶9 Shaughnessy filed a notice of intent to pursue postconviction relief. Shaughnessy's appointed postconviction attorney subsequently determined, however, that there were no arguably meritorious appellate issues, and Shaughnessy consented to counsel closing the file without filing a postconviction motion or appeal.

¶10     Shaughnessy later retained new counsel and filed a motion for postconviction relief under WIS. STAT. § 974.06, seeking resentencing. Shaughnessy alleged that: (1) the State breached the plea agreement at sentencing by covertly arguing for a sentence that exceeded the parties' joint recommendation; (2) the circuit court relied on inaccurate information and improper factors when imposing his sentence; (3) Shaughnessy's trial attorney was constitutionally ineffective by failing to object to the State's breach of the plea agreement, by "joining in the State's arguments instead of defending against them," and by failing to object to the court's reliance on inaccurate information and improper factors; and (4) Shaughnessy's appointed postconviction attorney was ineffective by failing to file a postconviction motion raising these issues.

¶11     The postconviction court denied Shaughnessy's motion for resentencing, following a nonevidentiary hearing.  First, the court concluded that Shaughnessy had failed to show that the State breached the plea agreement during its sentencing argument.  Second, the court concluded that Shaughnessy had not shown that there was inaccurate information before the circuit court at sentencing or that the court actually relied on the allegedly inaccurate information.  Third, the court concluded that Shaughnessy had not met his burden to show that the circuit court relied on any improper factors.  Given these conclusions, the postconviction court stated there was "no need to consider ineffective assistance of counsel."

¶12     Shaughnessy now appeals from the order denying his postconviction motion.  Additional facts are included below as relevant to the parties' arguments.

**DISCUSSION**

¶13     The parties agree that because Shaughnessy did not object at sentencing to the State's alleged breach of the plea agreement or to the circuit

court's alleged reliance on inaccurate information and improper factors, he cannot raise those claims directly on appeal. Instead, Shaughnessy must show that his trial attorney was constitutionally ineffective by failing to object to the alleged errors. *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) (stating the "normal procedure" in criminal cases is to address forfeited arguments "within the rubric of the ineffective assistance of counsel").

¶14 When reviewing an ineffective assistance of counsel claim, we will uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. However, whether the defendant's proof is sufficient to establish ineffective assistance is a question of law that we review independently. *Id.*

¶15 To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *Id.* at 697.

¶16 The circuit court rejected Shaughnessy's ineffective assistance claims without holding a *Machner* hearing. If a postconviction motion alleges facts that, if true, would entitle the defendant to relief, then the circuit court must hold an evidentiary hearing on the motion. *State v. Bentley*, 201 Wis. 2d 303,

309, 548 N.W.2d 50 (1996). The court may deny the motion without an evidentiary hearing, however, if the motion "fails to allege sufficient facts … to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *Id.* (citation omitted).

## I. Breach of the plea agreement

¶17 A criminal defendant has a due process right to the enforcement of a negotiated plea agreement. *State v. Williams*, 2002 WI 1, ¶37, 249 Wis. 2d 492, 637 N.W.2d 733. A defendant who alleges that the State has breached a plea agreement must show, by clear and convincing evidence, that a breach occurred and that the breach was material and substantial. *State v. Campbell*, 2011 WI App 18, ¶7, 331 Wis. 2d 91, 794 N.W.2d 276 (2010). A breach is material and substantial if it violates the terms of the plea agreement and defeats the benefit for which the accused bargained. *Williams*, 249 Wis. 2d 492, ¶38. In this case, because the facts relevant to the State's alleged breach are undisputed, whether the State's conduct amounted to a material and substantial breach of the plea agreement is a question of law that we review independently. *See Campbell*, 331 Wis. 2d 91, ¶7.

¶18 A prosecutor's failure to present a negotiated sentence recommendation to the circuit court constitutes a breach of the plea agreement. *Williams*, 249 Wis. 2d 492, ¶38. In addition, "[w]hile a prosecutor need not enthusiastically recommend a plea agreement, he or she 'may not render less than a neutral recitation of the terms of the plea agreement.'" *Campbell*, 331 Wis. 2d 91, ¶17 (citation omitted). Stated differently, "the State may not accomplish through indirect means what it promised not to do directly, and it may not covertly

convey to the [circuit] court that a more severe sentence is warranted than that recommended." *State v. Hanson*, 2000 WI App 10, ¶24, 232 Wis. 2d 291, 606 N.W.2d 278 (1999).

¶19    Nevertheless, the State may discuss negative facts about the defendant during its sentencing remarks in order to justify a recommended sentence within the plea agreement's parameters. *Campbell*, 331 Wis. 2d 91, ¶17. In fact, the State has a "duty to convey relevant information to the sentencing court," which the State must balance against its duty to honor the plea agreement. *Williams*, 249 Wis. 2d 492, ¶44.    The State must therefore walk a "fine line" at sentencing when required by a plea agreement to make a specific sentence recommendation.  *Id.*

¶20    Shaughnessy contends that the prosecutor crossed this fine line during his sentencing argument by making statements that "served to undercut the plea agreement and covertly indicated that the agreed-upon recommendation was too lenient."  Specifically, Shaughnessy notes that after reciting the parties' joint recommendation, the prosecutor stated that he had reviewed the PSI, which was

> deeply disturbing, one of the most disturbing PSIs that I have reviewed in my time prosecuting, for a couple of reasons.  I think what stood out the most, despite the fact that the defendant pled guilty to the second[-]degree child sexual assault in this case, he continually denied it to the presentence investigator.  And he despicably blamed much of the allegations against him on his son.  Those are two things that I find very hard, very difficult to see past.

¶21    The prosecutor then noted that, despite Shaughnessy's denials in the PSI, "this wasn't a case where the proof was lacking," given the video footage that showed Shaughnessy sexually assaulting Carly.  In particular, the prosecutor noted that during the video, the camera "pan[ned] back to [Shaughnessy's] own face and

8

you see the disturbing, disgusting, smirk on his face." Under these circumstances, the prosecutor stated that Shaughnessy's "continued denials and his excuses are disgusting."

¶22    Throughout his sentencing remarks, the prosecutor also repeatedly referred to this case as being "aggravated" and called Shaughnessy's crime "very grave." The prosecutor specifically stated that "much of the aggravated nature of this offense goes directly to the character of the defendant. These are terrible things that he's done. The way that he's used other people for his own pleasure is a terrible thing." The prosecutor also stated that there were "disturbing" things in the PSI "about how [Shaughnessy] views himself as a father," emphasizing that Shaughnessy knew that his daughter was using marijuana but did nothing to intervene. In addition, the prosecutor emphasized that Shaughnessy had blamed his son for "hooking [Carly] on methamphetamine" and for sending Carly vulgar messages from Shaughnessy's Facebook account. The prosecutor further noted that Shaughnessy had "a very serious criminal history dating back many years" and stated that there were not "very many redeeming things about [Shaughnessy's] character that can be seen from the evidence that's been presented in the form of the PSI."

¶23    Finally, the prosecutor emphasized that there were "very serious concerns" regarding the protection of the public because Shaughnessy's failure to accept responsibility "makes him a further risk to commit other offenses in the future." The prosecutor also asserted that Shaughnessy's poor performance while released on bond

> shows he is a very serious danger to the public. His lengthy criminal history, it shows that he is a danger to the public. And this very crime here is one of the most serious

types of crimes that a person can commit, one of the most horrendous types of crimes that a person can commit.

¶24 Shaughnessy argues these comments show that the prosecutor "reconsidered the recommendation that he agreed to make after reviewing the PSI report." According to Shaughnessy, the prosecutor's "vilification of … Shaughnessy served no purpose other than to portray [him] as an unrepentant monster and convey to the sentencing court that the recommended sentence was woefully inadequate punishment for someone like him." We disagree. Shaughnessy has not shown, by clear and convincing evidence, that the comments cited above constituted a material and substantial breach of the plea agreement, when considered in the context of the prosecutor's entire sentencing argument.

¶25 Notably, the prosecutor began his sentencing argument by reciting the joint recommendation and explaining why he believed that recommendation was appropriate. First, the prosecutor noted that, as a result of the plea agreement containing the joint recommendation, Shaughnessy had agreed to withdraw his suppression motion challenging the search of his cell phone and SD card. The prosecutor explained that the suppression motion presented an issue of law that was "unsettled" and that, "by reaching this resolution[,] we are having some clarity about what will happen, … a known outcome here." Second, the prosecutor emphasized that the joint recommendation of five years' initial confinement meant that Carly would reach the age of twenty-one before Shaughnessy was released from prison, which would give her "some period of time acclimating herself to adulthood" before his release. Third, the prosecutor noted that at the time the parties entered into the plea agreement, Carly did not want to testify at trial, and the agreement obviated the need for her to do so.

¶26    Only after explaining the rationale for the plea agreement and joint recommendation did the prosecutor make the comments that Shaughnessy now contends breached the plea agreement. We agree with the State, however, that in making his sentencing argument, the prosecutor needed to acknowledge the negative facts of the case, including the aggravated facts set forth in the PSI, to avoid losing credibility with the circuit court. As the State aptly notes, "It was not feasible to simply ignore the elephant in the room." Moreover, and importantly, the prosecutor concluded his sentencing argument by stating:

> Again, your Honor, I am asking that the Court follow the joint recommendation that we have here today. This is one that Counsel spent a great deal of time crafting and for very good reasons. The defendant did give up his right to challenge the evidence in this case and he should be given some consideration for that in the form of this recommendation that we have.
>
> So, your Honor, I am asking that the Court sentence the defendant to the Wisconsin State Prison System for a period of five years or ten years, five years of initial confinement followed by five years of extended supervision.

¶27    Thus, while the prosecutor discussed negative information about Shaughnessy during his sentencing argument, he both began and ended his remarks by reciting the agreed-upon joint recommendation. The prosecutor also explained why, despite the aggravated facts, the joint recommendation of five years' initial confinement and five years' extended supervision was appropriate. Under these circumstances, Shaughnessy has not shown that the prosecutor's remarks constituted a material and substantial breach of the plea agreement. As such, Shaughnessy's trial attorney did not perform deficiently by failing to object to the State's alleged breach. *See State v. Berggren*, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110 (counsel does not perform deficiently by failing to

raise a legal challenge that would have been properly denied). Furthermore, because the record conclusively shows that Shaughnessy is not entitled to relief, the postconviction court properly rejected this claim without a *Machner* hearing. *See Bentley*, 201 Wis. 2d at 309.

## II. Inaccurate information

¶28 Shaughnessy next argues that the circuit court erred by relying on inaccurate information at sentencing. "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. To prevail on a claim for resentencing based on inaccurate information, a defendant must show, by clear and convincing evidence, that: (1) there was inaccurate information before the court at sentencing, and (2) the court actually relied on the inaccurate information when imposing the defendant's sentence. *State v. Coffee*, 2020 WI 1, ¶38, 389 Wis. 2d 627, 937 N.W.2d 579.

¶29 Shaughnessy first contends that, when imposing his sentence, the circuit court relied on an inaccurate belief that he had provided Carly with methamphetamine in exchange for sex. Shaughnessy notes that, during the sentencing hearing, he expressly denied having sexual intercourse with Carly or trading her methamphetamine for sex. He further asserts that there was no other evidence in the record to support the court's belief that he had done so.

¶30 Shaughnessy has failed to show, by clear and convincing evidence, that the circuit court's statement about him giving Carly methamphetamine in exchange for sex was inaccurate. There was evidence in the record to support the court's inference in that regard. First, while Shaughnessy denies that he ever had sexual intercourse with Carly, the record would permit a contrary conclusion. As

discussed above, the amended complaint recounted Facebook messages in which Shaughnessy told Carly that he was "thinking about coming over and tearing up that pussy" and instructed her to "tighten up your cock washer," as well as messages about Carly sneaking out of her mother's home to meet Shaughnessy. In addition, the PSI recounted that law enforcement had recovered a pair of underwear bearing both Shaughnessy's sperm and other DNA for which Carly was included as a possible contributor. This evidence—in addition to the video showing Shaughnessy fondling Carly's bare breasts—would permit a reasonable inference that Shaughnessy had sexual intercourse with Carly, despite his denial.

¶31 Additionally, the amended complaint alleged that a mandatory reporter told investigators that Carly "had been using methamphetamine and prescription medication, allegedly provided to her by [Shaughnessy]." The amended complaint also stated that Carly's mother told police that she believed Shaughnessy had supplied Carly with methamphetamine. Carly's mother later told the PSI author that Carly "will have sex with anyone in exchange for meth." Taken together, this evidence supported a reasonable inference that Shaughnessy supplied Carly with methamphetamine in exchange for sex. On this record, Shaughnessy has not shown by clear and convincing evidence that the circuit court's statement to that effect was "extensively and materially false." *See State v. Travis*, 2013 WI 38, ¶18, 347 Wis. 2d 142, 832 N.W.2d 491.

¶32 Shaughnessy next asserts that the circuit court relied on an inaccurate belief that he was a sexual deviant with no possibility of rehabilitation. During its sentencing remarks, the court stated: "I think you have a defect in your character that allows you to have weird sex, kinky sex, prostitute sex, all of those things. That's—that will stay with you. Even if you agreed to be castrated your brain still has it up there. You would still try."

¶33     We agree with the State that the circuit court's comments regarding "kinky sex" and castration were "inartful," and we do not condone them. Nevertheless, we also agree with the State that Shaughnessy has not met his burden to show that there was inaccurate information before the court regarding his sexual deviancy or the prospect of rehabilitation.  Notably, the court never actually said that Shaughnessy was a sexual deviant, nor did it state that Shaughnessy had no possibility of rehabilitation.  While the court stated that Shaughnessy had a "defect in [his] character" related to sexual behavior that would "stay with [him]," that comment was not tantamount to a statement that Shaughnessy would necessarily be unable to conform his conduct to the law in the future, regardless of any treatment that he received.  Furthermore, while Shaughnessy emphasizes that the court ordered a sexual deviancy evaluation as a condition of his extended supervision, that condition merely shows that the court believed Shaughnessy should be evaluated for sexual deviancy, not that the court had already concluded he was a sexual deviant.

¶34     Relatedly, Shaughnessy asserts the circuit court's statement that he "[has] weird sex, kinky sex, prostitute sex" was inaccurate.  He contends that the court "did not provide a definition for its subjective opinion on what constitutes 'kinky' or 'weird' sex" and that there is "nothing in the record … that would indicate he patronizes prostitutes as the court alleged."

¶35     As to Shaughnessy's first assertion, the circuit court could reasonably conclude that forty-four-year-old Shaughnessy's sexual conduct with a fifteen-year-old friend of his daughter and ex-girlfriend of his son—some of which conduct Shaughnessy video recorded—was evidence that he had engaged in "kinky" or "weird" sex.  Shaughnessy's admission to the PSI author that he was

"involved in threesomes twice and engag[ed] in internet sex on three occasions" further supported the court's conclusion.

¶36    As to Shaughnessy's second assertion, Shaughnessy is correct that there is no evidence in the record indicating that he patronizes prostitutes. However, even assuming that the circuit court's statement in that regard was inaccurate, Shaughnessy has not shown by clear and convincing evidence that the court gave "explicit attention" or "specific consideration" to the inaccurate information, such that it "formed part of the basis for the sentence." *See Tiepelman*, 291 Wis. 2d 179, ¶14.    The court's single comment regarding Shaughnessy patronizing prostitutes cannot be said to have formed part of the basis for Shaughnessy's sentence when considered within the larger context of the court's sentencing remarks.

¶37    We therefore reject both of Shaughnessy's inaccurate information claims.  Because Shaughnessy's inaccurate information claims fail on their merits, his trial attorney did not perform deficiently by failing to object.  *See Berggren*, 320 Wis. 2d 209, ¶21.  In addition, because the record conclusively shows that Shaughnessy is not entitled to relief, the postconviction court did not err by denying Shaughnessy's ineffective assistance claim on these grounds without a *Machner* hearing.  *See Bentley*, 201 Wis. 2d at 309.

## III.  Improper factors

¶38    Next, Shaughnessy argues that the circuit court impermissibly relied on two improper factors when imposing his sentence.  "A circuit court erroneously exercises its sentencing discretion when it 'actually relies on clearly irrelevant or improper factors.'"  *State v. Alexander*, 2015 WI 6, ¶17, 360 Wis. 2d 292, 858 N.W.2d 662 (citation omitted).    Examples of improper factors include a

defendant's race, national origin, gender, and religion. *Id.*, ¶23. A defendant bears the burden of proving, by clear and convincing evidence, that the court actually relied on an improper factor. *Id.*, ¶17.

¶39 "To prove 'actual reliance' on an improper factor, a defendant must show that the circuit court made the improper factor a part of the 'basis for the sentence.'" *State v. Whitaker*, 2022 WI 54, ¶13, 402 Wis. 2d 735, 976 N.W.2d 304 (citation omitted). Stated differently, the defendant must show that the court imposed a harsher sentence solely because of the improper factor. *Id.* "[I]f a circuit court's reference to a challenged factor bears 'a reasonable nexus' to a proper sentencing factor, then the circuit court has not imposed sentence based 'solely' on the improper factor." *Id.* (citation omitted).

¶40 Shaughnessy first argues that the circuit court improperly sentenced him based on his gender. After announcing Shaughnessy's sentence, the court explained: "This particular sentence coincides with you getting out when you are 60 years old. You being supervised until you are 70 years old. By then lots of things aren't going to work." Shaughnessy asserts the "obvious implication" of this statement was that he "would be too old to be able to get an erection by the time he was released from prison." Shaughnessy therefore contends that the court improperly sentenced him based on his gender because, if he were female, there "would not be any need to impose a prison sentence long enough to ensure his penis no longer worked by the time he was released."

¶41 Shaughnessy has failed to show, by clear and convincing evidence, that the circuit court actually relied on his gender when imposing his sentence. As an initial matter, we are not convinced that the court's challenged comment was actually a reference to Shaughnessy's gender. Rather than referring to

16

Shaughnessy's ability to have an erection, the court could have been commenting on Shaughnessy's decreased ability to manipulate young girls by the time he reached age seventy—a consideration unrelated to his gender. Even assuming that the challenged comment was a reference to Shaughnessy's gender, however, Shaughnessy cannot show that the court actually relied on an improper factor because the comment bore a "reasonable nexus" to a proper sentencing factor. *See id.* (citation omitted).

¶42 Our supreme court's decision in ***Whitaker*** is instructive. There, when imposing sentence in a sexual assault case, the circuit court repeatedly referenced Whitaker's childhood Amish community and stated its intent to deter others within that community from failing to report or stop ongoing sexual assaults. *Id.*, ¶14. On appeal, our supreme court assumed, without deciding, that these references to Whitaker's childhood Amish community were improper. *Id.* The court concluded, however, that Whitaker had failed to show that the assumed improper factor "was the sole cause of a harsher sentence because it [bore] a reasonable nexus to relevant and proper sentencing factors." *Id.* Specifically, the court concluded that the circuit court's comments urging members of Whitaker's childhood Amish community to report or stop sexual assaults were related to the valid sentencing factors of general deterrence and protection of the public. *Id.*, ¶¶15-18.

¶43 Here, the circuit court's alleged reference to Shaughnessy's gender bore a reasonable nexus to a proper sentencing factor—namely, protection of the public. The court could consider the fact that Shaughnessy had sexually assaulted a child and could further reasonably infer that he had used his penis to do so. In drawing that inference, the court could specifically consider the video that showed Shaughnessy touching his erect penis while fondling Carly's breasts. Under these

circumstances, the court essentially decided that, in order to protect the public, Shaughnessy needed to be incarcerated or supervised until he became too old to be likely to victimize anyone else. As in *Whitaker*, there was a reasonable nexus between the improper factor—Shaughnessy's gender—and a proper sentencing factor—protection of the public. As such, Shaughnessy has failed to show by clear and convincing evidence that the court actually relied on an improper factor.

¶44 Next, Shaughnessy argues that the circuit court impermissibly imposed a lengthier sentence based on his "physical appearance and attractiveness to teenage girls." During its sentencing remarks, the court stated:

> Now, my goal here is to make sure that you are old enough where a 15 year old, 16, 17 year old girl, would find you terribly unattractive and would never even think of allowing them to be groomed by you. And how do you accomplish that? By you getting older in prison. So that's the goal here.

Shaughnessy contends that a defendant's physical appearance "is not an appropriate factor for the court to rely on in imposing sentence" and that "[a]n attractive defendant should not receive a lengthier sentence than an unattractive defendant."

¶45 This argument fails for two reasons. First, Shaughnessy cites no legal authority in support of the proposition that a defendant's physical attractiveness is an improper factor for consideration at sentencing. We need not consider arguments that are unsupported by references to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶46 Second, the circuit court never stated that it believed Shaughnessy was physically attractive and that it was imposing a lengthier sentence for that reason. Instead, the court reasonably inferred that—whatever Shaughnessy's

current level of physical attractiveness—as he aged, he would become less physically attractive to teenage girls and would therefore be less capable of manipulating them and grooming them for sexual assault. Thus, to the extent the court considered Shaughnessy's physical attractiveness, that factor bore a reasonable nexus to a proper sentencing factor—i.e., protection of the public. *See Whitaker*, 402 Wis. 2d 735, ¶13. Accordingly, even if a defendant's physical attractiveness is an improper factor, Shaughnessy has failed to demonstrate that the court actually relied on that factor when imposing his sentence.[4]

¶47 Because Shaughnessy has failed to show that the circuit court actually relied on any improper factors at sentencing, his trial attorney did not perform deficiently by failing to object. *See Berggren*, 320 Wis. 2d 209, ¶21. Furthermore, the postconviction court properly denied Shaughnessy's ineffective assistance claim on these grounds without a *Machner* hearing, as the record conclusively shows that Shaughnessy is not entitled to relief. *See Bentley*, 201 Wis. 2d at 309.

## IV. Trial counsel's sentencing argument

¶48 Finally, Shaughnessy argues that his trial attorney was constitutionally ineffective at sentencing by "agreeing with the State's objectionable statements and making objectionable statements of his own, particularly regarding the PSI and its negative assertions." Among other things,

---

[4] In a related argument, Shaughnessy asserts that his "physical attractiveness to [fifteen-to-seventeen]-year-old girls would also not have been a significant factor had he been female." Shaughnessy provides no support for this assertion and does not further develop his argument in this regard. "We may decline to review issues [that are] inadequately briefed." *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

Shaughnessy's trial attorney: (1) described the prosecutor's summary of the case as "accurate, if not somewhat troubling"; (2) discussed the "aggravating" fact that Shaughnessy was a "father figure" for Carly; (3) stated that counsel had seen "worse … scores" on the COMPAS risk assessment, but "not many"; (4) emphasized Shaughnessy's "troubling" scores on the "substance abuse" and "criminal associates" portions of the COMPAS assessment; (5) stated that counsel had only seen "a couple" PSIs worse than Shaughnessy's; and (6) stated that Shaughnessy "still struggles with accepting what he's done."

¶49    Shaughnessy contends that his trial counsel's "harsh statements against his client's own interests" and "agreement with the worst aspects of the prosecutor's statements" were "inexcusable." He contends that none of the statements identified above "served to advance or protect [Shaughnessy's] interests in any way. They were purely harmful."

¶50    We conclude that the postconviction court properly denied this ineffective assistance claim without a ***Machner*** hearing because the record conclusively shows that Shaughnessy is not entitled to relief. Specifically, Shaughnessy cannot establish that his trial attorney's remarks constituted deficient performance.

¶51    Shaughnessy asserts that his trial attorney should have "disput[ed], clarif[ied], explain[ed], or even ignor[ed]" the prosecutor's negative comments about Shaughnessy and the aggravated facts set forth in the PSI, rather than "[a]greeing with (and highlighting)" those negative characterizations. As the State aptly notes, however, the circuit court had read the PSI and "already [knew]" that "the facts were bad." We agree with the State that, under these circumstances, "[i]gnoring the facts or making excuses for them would not have helped."

20

¶52 In any event, Shaughnessy's trial attorney *did* try to explain and contextualize the aggravated facts of the case. In particular, trial counsel argued that there are essentially "two Chris Shaughnessys"—the "hard[-]working, caring, family man Chris Shaughnessy" and the "troubled, drug[-]addicted, criminal Chris Shaughnessy." Trial counsel emphasized that Shaughnessy's criminal behavior and failure to accept responsibility were the result of his struggles with methamphetamine, but when sober, Shaughnessy "is remorseful and regrets what happened." Trial counsel also emphasized that Shaughnessy had been sober for eight months. In addition, trial counsel noted that Shaughnessy had been placed on probation in the past and had never been revoked, which was a "bright spot in the PSI." Finally, while trial counsel joined in the State's recommendation for five years' initial confinement followed by five years' extended supervision, he also argued that a longer sentence could have negative ramifications, as keeping a person incarcerated for too long can negatively affect his or her ability to function outside of prison.

¶53 Ultimately, we agree with the State that Shaughnessy's trial attorney "did the best he could given the terrible facts Shaughnessy gave him to work with." Trial counsel did not perform deficiently by acknowledging the negative facts about Shaughnessy and his crime but then arguing, for several reasons, that the parties' joint sentence recommendation was nevertheless appropriate. Because the record conclusively demonstrates that Shaughnessy is not entitled to relief, the postconviction court did not err by rejecting this ineffective assistance claim without a *Machner* hearing. *See Bentley*, 201 Wis. 2d at 309.

21

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.